IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SANDRA HAUGHTON,<br><br>Plaintiff,<br><br>v.<br><br>OMAHA PUBLIC SCHOOL DISTRICT, a political subdivision,<br><br>Defendant. | ) | 8:05CV43<br><br>MEMORANDUM OPINION |

This matter is before the Court on defendant's motion for summary judgment (Filing No. 42). Plaintiff claims she was discriminated against based on age and retaliated against for filing a discrimination charge. Having reviewed the motion, the parties' submissions, and the applicable law, the Court finds that defendant's motion should be granted.

**STANDARD OF REVIEW**

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 (8th Cir. 2003). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed.

R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id*. at 324-25.

In response to the proponent's showing, the opponent's burden is to “come forward with 'specific facts showing that there is a genuine issue for trial.'” *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(quoting Fed. R. Civ. P. 56(e)). A “genuine” issue of material fact is more than “some metaphysical doubt as to the material facts.” *Id*. at 586. “[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.” *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). “If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted.” *Id*. at 249-50 (citations omitted).

Summary judgment motions must be carefully used in an employment discrimination case, and the Court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150, 120 S. Ct. 2097 (2000); *Smith v. St. Louis Univ*., 109 F.3d 1261, 1264 (8th Cir. 1997). However, summary judgment is appropriate when there is no factual dispute on an essential element of a claim. *Smith* 109 F.3d at 1267-68.

**BACKGROUND**

Plaintiff, Sandra Haughton, was born on November 13, 1941. She worked as a school psychologist for Omaha Public Schools (“OPS”) from 1991 through her resignation on August 31,

2004.  At the time of her resignation, Haughton was assigned to Fontenelle Elementary School ("Fontenelle"), Morton Middle School ("Morton"), and North High School ("North").

In 2003, Haughton applied for the position of OPS Psychological Services Coordinator and was one of five candidates selected to interview for the position.  A five-member panel interviewed the five candidates on November 7, 2003.  Each candidate was asked the same sixteen questions, and the interviewers scored the candidates based on their answers.  The individual interviewers consistently scored Haughton lowest or second to lowest on their individual sheets, and when they tallied their scores, Haughton received the lowest score of the five candidates.  In addition, the panel members noted the candidates' strengths and weaknesses on the score sheets.  Four of the five interviewers specifically noted that Haughton did not answer all of the questions posed and that her answers lacked depth (Filing No. 44, Ex. 5).

The panel recommended Collette Nero, who was allegedly in her upper 20s, for the position.  Although she was ranked second based on her scores, the panel determined she demonstrated strong leadership skills and had a good understanding of the community.  The panel determined that the candidate who had received the highest score lacked familiarity with the community and experience in an educational setting (Filing No. 44, Ex. 2, ¶¶7,8).  OPS offered Nero the position, and she accepted.  Haughton learned of the hiring decision on November 14, 2003, and

she filed a charge with the Nebraska Equal Opportunity Commission ("NEOC") and the Equal Employment Opportunity Commission ("EEOC") on November 19, 2003, alleging she had been discriminated against on the basis of age.

After Nero became the Psychological Services Coordinator, a dispute arose between Nero and Haughton concerning the status of a student Haughton had tested in February 2003, but the documentation she submitted failed to support the verification of a behavioral disorder. In March 2003, the Department of Special Education Placement Office requested that Haughton complete the paperwork and resubmit it. Haughton did not do so, and the student was subsequently transferred to Blackburn in June 2003. In December 2003, Nero requested that Haughton complete the paperwork on this student; however, Nero and Haughton disagreed on whether the paperwork was the responsibility of Haughton or the student psychologist at Blackburn. Haughton ultimately refused to complete the paperwork (Filing No. 44, Ex. 11).

OPS received requests from the principals of North and Morton that Haughton not be assigned to their schools for the 2004-05 school year, indicating that Haughton had not completed her work in a timely manner (Filing No. 44, Exs. 12,13). Haughton was informed that she would be reassigned out of these schools. She contends the reassignment occurred because Nero's friend, Trina Gill-Glover, wanted to be transferred to North and had previously asked Haughton to trade with her. Haughton also

contends that Nero “sabotaged” Haughton’s relationship with the schools in which Haughton worked. On July 30, 2004, Haughton submitted a letter of resignation effective August 31, 2004.

Haughton filed a charge with the NEOC and EEOC on August 13, 2004, alleging she had been retaliated against after filing a charge of age discrimination. Haughton sent a formal complaint of retaliation to the Nebraska Department of Education on October 14, 2004. The EEOC dismissed Haughton’s charge of discrimination and issued a Right to Sue letter on November 3, 2004. Haughton filed her complaint on February 1, 2005, alleging age discrimination. The EEOC dismissed her retaliation charge and issued a Right to Sue letter on March 21, 2006. Haughton amended her complaint to include a retaliation claim.

**DISCUSSION**

As an initial matter, the Court notes that Haughton incorrectly invoked the jurisdiction of this Court pursuant to the Age Discrimination Act of 1975, rather than the Age Discrimination in Employment Act of 1967 (“ADEA”). Haughton’s attorney admits that this was attorney error. OPS had noted in its original answer and answer to the amended complaint that Haughton purported to seek relief under the ADEA, cited the correct statute, and admitted that the Court had jurisdiction of the age discrimination claim, demonstrating that OPS was not misled as to the basis of Haughton’s claim. For purposes of this motion, the Court will construe the claim as a claim under the ADEA.

**I. Age Discrimination**

The ADEA, 29 U.S.C. §§ 621, *et seq*., prohibits discrimination in employment practices on the basis of age against individuals who are at least forty (40) years old. 29 U.S.C. §§ 623(a), 631(a). To establish an age discrimination claim under the ADEA, a plaintiff must prove that her employer discriminated against her on the basis of age. *Ziegler v. Beverly Enterprises-Minnesota, Inc.,* 133 F.3d 671, 675 (8th Cir. 1998). Haughton's discrimination claim relies on indirect or circumstantial evidence; therefore, the Court must employ the three-step burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Trammel v. Simmons First Bank of Searcy*, 345 F.3d 611, 614 (8th Cir. 2003). First, the plaintiff must present a prima facie case of age discrimination. Second, if the plaintiff presents a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Third, if the employer sustains its burden, the burden shifts back to the plaintiff to prove the defendant's proffered reasons are a pretext for discrimination. *Allen v. City of Pocahontas, Arkansas*, 340 F.3d 551, 557-58 (8th Cir. 2003). "The burden of persuasion remains with the plaintiff throughout." *Yates v. Rexton, Inc*., 267 F.3d 793, 799 (8th Cir. 2001)(citing *Hutson v. McDonnell Douglas Corp*., 63 F.3d 771, 776-77 (8th Cir. 1995).

In the first step of the analysis, to establish a prima facie case of age discrimination for failure to promote, a

plaintiff must show: (1) she is at least forty years old; (2) she met the applicable job qualifications; (3) she was rejected; and (4) her employer filled the position with an "individual sufficiently younger to permit the inference of age discrimination." *Hammer v. Ashcroft*, 383 F.3d 722, 726 (8th Cir. 2004)(quoting *Schiltz v. Burlington Northern Railroad*, 115 F.3d 1407, 1412 (8th Cir. 1997)). The Court finds Haughton has stated a prima facie case of age discrimination. Haughton was nearly sixty-two (62) years old when she interviewed for the coordinator position, she met the qualifications for the position, she was not chosen for the position, and a sufficiently younger candidate was offered the position.

Likewise, the Court finds OPS has satisfied its burden at the second stage. The evidence demonstrates that OPS selected Haughton as one of five candidates to interview for the coordinator position. The interviews were structured and well-documented. Each candidate was asked sixteen questions and ranked according to nine categories. Haughton ranked last among the five candidates, and the interviewers noted that she did not answer all of the questions and that her answers lacked depth. The job was offered to Nero, who received the second highest score, because the panel determined she had strong leadership skills and a good understanding of the community, while the highest scoring candidate lacked familiarity with the district and educational experience.

At the third stage, Haughton has the burden to show OPS's stated reason for its action was a pretext for discrimination. The Court finds Haughton has not satisfied her burden. She presents no evidence that age was a determinative factor in the promotion decision. Instead, she relies on her own cursory statements that she had superior education and experience, and that there could be no other reason for offering the position to Nero over Haughton other than age discrimination. However, Haughton's perceptions, without more, are insufficient to meet her burden to prove pretext. On the contrary, the evidence shows that as part of the interview process, the panel considered the candidates' education and experience and ranked the candidates accordingly. This was just one factor the panel considered, and based on the sixteen questions asked and the nine categories considered, the panel found Nero was the superior candidate and recommended her for the position over Haughton. Because Haughton failed to sustain her burden at the pretext level, the Court will grant OPS's motion with respect to the age discrimination claim.

**II. Retaliation**

"Title VII makes it unlawful for an employer to discriminate against an employee 'because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or

hearing under this subchapter.'" *Bassett v. City of Minneapolis,* 211 F.3d 1097, 1104 (8th Cir. 2000)(citing 42 U.S.C. § 2000e-3(a)). To establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) and that there was a causal connection between the adverse employment action and the protected activity. *Allen v. Tobacco Superstore, Inc*., 475 F.3d 931, 939 (8th Cir. 2007).

There is no dispute that Haughton engaged in a statutorily protected activity by filing an age discrimination charge with the EEOC; however, the parties dispute the second and third requirements. To establish that there was an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse" and that the action might well have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway v. White,* 126 S. Ct. 2405, 2415 (2006). In *White,* the United States Supreme Court opined that "[t]he anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *White,* 126 S. Ct. at 2414. The Supreme Court further stated that "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id*. at 2415. Citing 1 B. Lindemann & P. Grossman, *Employment*

*Discrimination Law* 669 (3d ed. 1996), the Court noted that "courts have held that personality conflicts at work that generate antipathy" and "'snubbing' by supervisors and co-workers are not actionable." *Id.*

Haughton claims Nero retaliated against her after Haughton filed her discrimination charge in the following ways: (1) Nero sabotaged Haughton's relationships with the schools in which she worked; (2) Haughton was assigned to different schools for the 2004-05 school year; (3) Nero scrutinized her more strictly than other employees; (4) Nero reprimanded her for taking vacation without approval; (5) Nero interrupted her and questioned her in front of others; and (6) Haughton received lower evaluations from her schools. Haughton claims she experienced weight loss, depression, anxiety, insomnia, and crying spells, and as a result, was forced to retire three years earlier than she had planned.

Haughton claims that she was constructively discharged. The Court disagrees. "[T]o prove that a constructive discharge occurred, the plaintiff must demonstrate that a reasonable person would find the working conditions intolerable. . . . [T]he question is whether working conditions were rendered so objectionable that a reasonable person would have deemed resignation the only plausible alternative." *Tatom v. Georgia-Pacific Corp.* 228 F.3d 926, 932 (8th Cir. 2000). Criticism, reprimand, dissatisfaction with work assignments, and denial of transfer request do not rise to the level of

constructive discharge.  *Id.* (citing *Spears v. Missouri Dept. of Corrections and Human Resources*, 210 F.3d 850, 855 (8th Cir. 2000).  Furthermore, "[a]n employee who quits without giving [the] employer a reasonable chance to work out a problem has not been constructively discharged."  *Tork v. St. Luke's Hospital*, 181 F.3d 918, 920 (8th Cir. 1999)(citing *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996)).  The Court finds that even if all of Haughton's allegations are true, her working conditions were not sufficiently intolerable to constitute constructive discharge, and there is no evidence that she notified OPS of the alleged retaliation prior to submitting her resignation.

Similarly, the Court finds Haughton's remaining allegations do not rise to the level of adverse employment actions under *Burlington Northern Railroad v. White*.  First, Haughton claims that Nero sabotaged her relationship with the schools in which she worked.  Other than her statement, there is no corroborating evidence to support this allegation.  Second, Haughton claims the decision to transfer her to different schools for the 2004-05 school year supports her retaliation claim.  As Haughton testified, she had worked for approximately fifteen schools during her thirteen years of employment with OPS (Filing No. 44, Ex. 1 at 25:25-26:3).  There is no evidence that Haughton's transfer was unusual or causally connected to her filing of a discrimination charge.  Rather, the evidence shows that the principals of North and Morton requested this change,

citing Haughton's failure to complete work in a timely manner and problems with her working relationship with school staff (Filing No. 44, Exs. 12, 13). Furthermore, Haughton was never transferred because she resigned prior to the 2004-05 school year. Third, Haughton complains that Nero scrutinized her more strictly than the other school psychologists. Haughton testified that Nero implemented a new policy whereby the school psychologist who initially worked with a student was expected to follow up on that student, even if that student changed schools (Filing No. 51, Ex. 3 at 64:14-67:9). Haughton opposed this policy; however, there is no evidence this rule change was designed to retaliate against her or was only applied to her. With respect to the incident of the student who transferred from North to Blackburn, the evidence demonstrates that Haughton refused to complete paperwork after she was requested to do so *prior to and after* the student transferred schools and Haughton filed her discrimination charge; thus, the evidence does not support a finding that there was a causal connection to the filing of her discrimination charge (Filing No. 44, Exs. 7, 9-11). Fourth, Haughton argues that she was retaliated against when Nero reprimanded her in May 2004 for taking a two-week vacation without prior approval. Haughton argues that she followed the same procedure she had always followed by informing the secretarial staff and schools that she would be gone. The Court finds this allegation does not support a retaliation claim. Although Haughton claims Nero approved another employee's

vacation, there is no evidence that Nero would have denied Haughton vacation time had she sought approval. Fifth, the Court finds Haughton's allegations that Nero interrupted her meetings and questioned her do not constitute adverse employment actions. "[P]ersonality conflicts at work that generate antipathy" and "'snubbing' by supervisors and co-workers are not actionable." *White,* 126 S. Ct. at 2415. Anti-retaliation laws are not designed to establish "a general civility code for the American workplace." *Id.* (citing *Oncale v. Sundowner Offshore Services, Inc*., 523 U.S. 75, 80 (1998)). Finally, Haughton complains that she received lower evaluations from the schools after filing her discrimination charge. These evaluations were made by the principals of these schools, and there is no evidence that they had any knowledge of Haughton's discrimination charge or that they based their evaluations on anything other than Haughton's performance.

The Court finds that Haughton has failed to state a prima facie case of retaliation. She failed to demonstrate that OPS took a materially adverse action against her that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *See White,* 126 S. Ct. at 2415. Nor did she demonstrate that there was a causal connection between her protected activity of filing a discrimination charge and the

allegedly adverse employment actions. A separate order will be entered in accordance with this memorandum opinion.

DATED this 8th day of March, 2007.

BY THE COURT:

/s/ Lyle E. Strom

LYLE E. STROM, Senior Judge
United States District Court